**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **CALVIN D. STARKS** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **No. 3:20-cv-00311** |
| | ) | **(Crim. Nos. 3:15-cr-00147-5;** |
| **UNITED STATES OF AMERICA** | ) | **3:16-cr-00142-2)** |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION

> *"The question in this case is whether an attempted robbery in violation of the federal Hobbs Act qualifies as a crime of violence. . . . My initial take was that an attempted robbery must surely qualify as a crime of violence. After all, a robbery is the paradigm of a violent crime. . . . Why should a failed or attempted robbery be treated any differently? . . . Or so I thought until the law got in the way."* [1]

Calvin D. Starks' Amended Motion to Vacate, Set Aside, or Correct Sentence in Accordance With 28 U.S.C. § 2255 (Doc. No. 9) asks this Court to grapple with that question, assuming he can get around the Government's assertion in its Response (Doc. No. 13) that he has waived his right to present his claims by virtue of his plea agreement. To place these nettlesome issues and others in perspective, a bit of background is necessary.

### I. Factual Background and Procedural Posture

As is too often the case in south Nashville, Tennessee, the J.C. Napier community was the subject of gun violence in the Fall of 2014. Starks and his associates were an integral part of that violence. In both his plea agreement and plea colloquy (Case No. 3:16-cr-142 Doc. Nos. 187, 204), Starks agreed that the following facts were true:

---

[1] United States v. Halliday, No. 3:17-CR-00267 (JAM), 2021 WL 26095, at *1 (D. Conn. Jan. 4, 2021) (footnotes omitted).

On October 16, Starks and his cousin Darryl shot Joshua Woods multiple times, ostensibly because Woods had failed to support Darryl in a fight with Martez Parham earlier in the day at a nearby barbershop. Woods required medical treatment for his gunshot wounds. Even though Woods identified his assailants to the police, Starks' aunt, Ivy C. Starks, attempted to bribe Woods and made veiled threats against him in an effort to prevent him from testifying about the shooting and assailants at court proceedings.

Barely a month after the Woods shooting, Starks and Terrence Kimbrough ambushed and attempted to rob Brandon Leggs, who they believed to be a marijuana dealer carrying drug proceeds. On November 26, 2014, after Leggs came out of a market on Lewis Street that sits across from Napier and got into his car, Starks and Kimbrough approached the vehicle on both sides and began speaking to Leggs through the open windows. As Leggs tried to drive off, the two opened fire with semi-automatic pistols and then fled the scene. Leggs drove a short distance, got out of his car, collapsed on the street, and died.[2]

Monte Watson was in the area and witnessed Starks and Kimbrough shoot Leggs. At the time, Watson was already cooperating with local and federal authorities, and was providing information about criminal activity in and around the J.C. Napier housing development. Watson reported the event to the police, and told friends and relatives what he had seen.

In the days following the murder, Starks and Kimbrough came to believe that Watson was a witness and likely to tell authorities about their involvement in Leggs' murder. Alarmed and armed, they began looking for Watson in earnest, and went to a residence in Napier but did not find

---

[2] Casings from a 9mm handgun recovered from the scene also matched casings from a shooting at an occupied vehicle three days earlier. Starks participated in that incident as well.

him there.

On December 1, 2014, Starks was arrested at his girlfriend's house. The next day, during a recorded call from the jail, Starks stated that he knew Watson was a "snitch," and that both he and Kimbrough had been looking for Watson. Less than 24-hours later, at 3:05 a.m. on December 3, 2014, Watson was shot and killed near Lewis and Robertson Streets, just outside the J.C. Napier housing complex. Watson was killed by Kimbrough and a juvenile in order to prevent him from revealing information he knew regarding Leggs' murder, and other crimes committed by Kimbrough, Starks, and others.

As a result of these events, a federal grand jury returned two indictments against Starks. In the first case, 3:15-cr-147-5 ("the 2015 case"), a fourteen-count Superseding Indictment was returned against seven Defendants. There, Starks was charged in Count Eight with possessing ammunition as a user of controlled substances in violation of 18 U.S.C. § 922(g)(3) in relation to the Woods shooting. Kimbrough, Parham, and Darryl and Ivy Starks were also named in that Indictment.

The second case, 3:16-cr-142-2 ("the 2016 case"), involved an eleven-count Indictment against five Defendants. Starks was charged in the following counts with the following crimes in relation to the attempted robbery and murder of Leggs, and the subsequent efforts to track down Watson:

> (1) Count One: Conspiring to commit Hobbs Act robbery in violation of 18 U.S.C. §§ 2 & 1951.
>
> (2) Count Two: Carrying and discharging a firearm while conspiring and attempting to commit the Hobbs Act robbery (alleged in Count One) resulting in death, in violation of 18 U.S.C. § 924(j).
>
> (3) Count Three: Possessing ammunition as a user of controlled substance (in connection with Count Two), in violation of 18 U.S.C. § 922(g).

3

(4) Count Five:  Conspiring to commit witness intimidation in violation of 18 U.S.C §§ 2 & 1512.

(5) Count Six:  Carrying a firearm while conspiring to commit witness intimidation in violation of 18 U.S.C. §§ 2 & 924(C)(1)(a).

Again, Kimbrough was named in this Indictment, as was Brandon Starks, petitioner's brother.

On June 1, 2017, Starks and the Government entered into a Rule 11(c)(1)(C) plea agreement to resolve both cases.  In exchange for a 420 month (35 year) sentence and the dismissal of Count Six in the 2016 case, Starks agreed to plead guilty to the single count against him (Count Eight) in the 2015 case, and to Counts One, Two, Three and Five in the 2016 case.  The Plea Agreement was accepted by Judge Aleta A. Trauger, and Starks was sentenced in accordance with the terms of his plea agreement by visiting Judge Roger H. Lawson, Jr.  More specifically, Starks was sentenced to 120 months in the 2015 case, and to 240 months on Count One, 420 months on Count Two, 120 months on Count Three, and 360 months on Count Five in the 2016 case.  The sentences were all ordered to be served concurrently.[3]

Starks did not appeal his convictions or sentence.  Nor did he file a motion to correct, vacate, or set aside within one year of the convictions becoming final in accordance with 28 U.S.C. § 2255(f)(1).  Nevertheless he argues his present motion and supplemental motions are timely and meritorious because of two cases decided by the Supreme Court in June 2019.

First, in United States v. Davis, 139 S. Ct. 2319, 2336 (2019), the Court found the residual clause of Section 924(c)(3) to be unconstitutionally vague.  This wrought a sea-change in Sixth Circuit jurisprudence in several respects.  For one, in seeking an enhanced sentence for firearm

---

[3] Under the advisory guidelines range, Starks faced a 35 year to life sentence, plus a consecutive 5 year sentence for his 924(c) conviction for carrying a firearm in relation to conspiring to commit witness intimidation.

4

possession or use, the Government could no longer rely on the residual clause that the statute defined as a felony involving "a substantial risk that physical force . . . may be used." 18 U.S.C. § 924(c)(3)(A). Instead, in order to secure the enhanced penalty, the Government was required to prove a felony under the elements clause, which meant that the firearm was used in a crime that had "as an element the use, attempted use, or threatened use of physical force against the person or property of another." Id. § 924(c)(3)(B). This abrogated controlling Sixth Circuit law in the form of United States v. Taylor, 814 F.3d 340, 379 (6th Cir. 2016) that upheld the residual clause against a vagueness challenge. See, Manners v. United States, 947 F.3d 377, 379 (6th Cir. 2020) (noting that Davis abrogated Taylor). Moreover, even though "Davis established a 'new rule' because its 'result was not dictated by precedent existing at the time the defendant's conviction became final,'" it applies retroactively. In re Franklin, 950 F.3d 909, 911 (6th Cir. 2020) (citing Welch v. United States, 136 S. Ct. 1257, 1264–65 (2016)).

Second, in Rehaif v. United States, 139 S. Ct. 2191 (2019), the Supreme Court examined the interplay between § 922(g)'s prohibition against carrying a firearm by individuals who fall within any one of nine categories from possessing firearms,[4] and § 924(a)(2)'s provision that a person who knowingly violates the statute is subject to up to ten-years imprisonment. Specifically, does the word knowingly in the statute "mean that the Government must prove that a defendant knew both that he engaged in the relevant conduct (that he possessed a firearm) and also that he fell within the relevant status (that he was a felon, an alien unlawfully in this country, or the like)?" Id. at 2194. The Supreme Court answered the question in the affirmative, holding that "the word 'knowingly' applies

---

[4] This includes an "unlawful user of or addicted to any controlled substance," 18 U.S.C. § 922(g)(3), as Starks was alleged to have been.

both to the defendant's conduct and to the defendant's status." Id. Therefore, the Government "must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." Id. Starks claims that Rehaif, too, abrogated controlling Sixth Circuit precedent, this time in the form of United States v. Olender, 338 F.3d 629 (6th Cir. 2003).

## II. Legal Analysis

Against this backdrop, Starks brings three claims for relief. He argues that his conviction on Count Two in the 2016 case alleging the use of a firearm in a crime of violence resulting in death under 18 U.S.C. §924(j) must be vacated because the underlying offense supporting this conviction – conspiracy and attempt to commit Hobbs Act robbery – can only be considered a "crime of violence" under § 924(c)'s residual clause that was invalidated in Davis. Next, Starks claims that his convictions on Count Eight in the 2015 case and Count Three in the 2016 case, both of which alleged the possession of ammunition by the user of a controlled substance, are invalid in light of Rehaif because he was not told either in the plea agreement or at the change of plea hearing that one of the elements was that he knew he was a drug user. Finally, Starks alleges that his conviction on Count Two in the 2016 case must be vacated for the additional reason that he was not advised that § 924(c)(3) was void for vagueness as applied to him, much like he was not told that he had to know he was a drug user to be convicted of the just mentioned counts.

The Government argues that the Davis claim is barred by Starks' plea agreement, wherein he waived the right to collaterally attack his sentence in a proceeding under § 2255. The Government also argues that Starks has procedurally defaulted on both his Davis and Rehaif based claims and he cannot show either cause and prejudice or actual innocence to excuse this failure. Finally, the Government argues that Starks' Davis-based claim fails on the merits because attempted

6

Hobbs Act robbery qualifies as a § 924(c) predicate crime of violence, even in the aftermath of Davis.

Because Starks' claims are potentially barred by the waiver in his plea agreement, the Court begins with that issue.

## A. Waiver

"It is well settled that a defendant in a criminal case may waive any right . . . by means of a plea agreement." United States v. Calderon, 388 F.3d 197, 199 (6th Cir. 2004) (quoting United States v. Fleming, 239 F.3d 761, 763–64 (6th Cir. 2001)). This, of course, "includes the right to appeal,'" United States v. Melvin, 557 F. App'x 390, 393 (6th Cir. 2013), as well as the right to mount a collateral attack, under Section 2255, Davila v. United States, 258 F.3d 448, 450 (6th Cir. 2001). "A waiver provision is binding and forecloses appellate [or collateral] review if (1) the defendant's claim falls within the scope of the appeal waiver provision; and (2) the defendant 'knowingly and voluntarily' agreed to the plea agreement and waiver." United States v. Milliron, No. 19-3720, 2021 WL 79798, at *2 (6th Cir. Jan. 11, 2021) (citing United States v. Toth, 668 F.3d 374, 377–78 (6th Cir. 2012)).

Starks' plea agreement contained a provision titled "Waiver of Appellate Rights." In its entirety, the provision reads:

> Regarding the issue of guilt, defendant hereby waives all (i) rights to appeal any issue bearing on the determination of whether he is guilty of the crime(s) to which he is agreeing to plead guilty; and (ii) trial rights that might have been available if he exercised his right to go to trial. Regarding sentencing, Defendant is aware that 18 U.S.C. § 3742 generally affords a defendant the right to appeal the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal any sentence that includes a total term of 420 months imprisonment and five years of supervised release as agreed upon herein pursuant to Fed. R. Crim. P. 11(c)(1)(C) under the conditions stated above. Defendant also knowingly waives the right to challenge the

7

sentence imposed in any motion pursuant to 18 U.S.C. § 3582(c) and in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255 and/or § 2241. However, no waiver of the right to appeal, or to challenge the adjudication of guilt or the sentence imposed in any collateral attack, shall apply to a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel. Likewise, the government waives the right to appeal any sentence: (i) within or above the guideline range as determined by the Court; or (ii) below such guideline range if the government has moved for a downward departure pursuant to U.S.S.G. §5K1.1.

(Case 3:16-cr-142, Doc. No. 187 at 16, ¶ 24).

The Government argues that this "waiver provision squarely covers [Starks'] <u>Davis</u>-based motion to vacate his sentence and it is fully enforceable under applicable case law," (Doc. No. 13 at 6), but never explains how this is so. All the Government does is discuss general principles surrounding waiver provisions, and asserts that "Starks is attempting to use 28 U.S.C. § 2255 as a vehicle to make a substantive challenge to his <u>sentence</u> – an act that is prohibited by the plain terms of his plea agreement." <u>Id.</u> at 9.

The term "waiver of appellate rights" is a "useful shorthand for clauses like those in [Starks'] plea agreement[]," but "it can misleadingly suggest a monolithic end to all appellate rights" when, in fact, "no appeal waiver serves as an absolute bar to all appellate claims." <u>Garza v. Idaho</u>, 139 S. Ct. 738, 744 (2019). Instead, whether a claim falls within the scope of a waiver is determined using ordinary contract law principles and construing any ambiguities against the government, <u>Milliron</u>, 2021 WL 79798, at *2, albeit with an additional caveat. Unlike typical parties to a contract, "the government [is held] to a greater degree of responsibility than the defendant . . . for imprecisions or ambiguities in the plea agreements," <u>United States v. Bowman</u>, 634 F.3d 357, 360–61 (6th Cir. 2011), "particularly . . . where the government could have taken steps to avoid imprecision," <u>United States v. Fitch</u>, 282 F.3d 364, 367–68 (6th Cir.2002).

8

Tellingly, the Government asserts that Starks is using Section 2255 to make a "substantive challenge to his *sentence,*" (Doc. No. 13 at 9) most likely because the waiver he signed only precludes collateral attacks on sentences. Nowhere does it preclude collateral challenges to convictions. Indeed, that word does not even appear in the waiver provision, although it appears elsewhere in the plea agreement. Even so, direct *appeals* are barred by the first sentence because it "regard[s] the issue of guilt," and waives the "right[] to *appeal* any issue bearing on the determination of whether he is guilty of the crime(s) to which he is agreeing to plead guilty." (emphasis added). The waiver on collateral attacks contains no such statement – it simply "waives the right to challenge the sentence imposed . . . in any collateral attack, including . . . a motion brought pursuant to 28 U.S.C. § 2255 and/or § 2241." This understanding of the provision was confirmed during the plea colloquy when Judge Trauger explained to Starks that he was waiving (1) "certain *appellate rights* in this plea agreement," including the "right to contest whether you are guilty of the offenses you are pleading guilty to"; (2) the "right to *appeal* any *sentence* that includes this agreed-upon sentence"; and (3) the "right to challenge the *sentence* imposed in a collateral attack." (No. 3:16-cr-00142, Doc. No. 204 at 18) (emphasis added). [5]

At the very minimum, the waiver provision is ambiguous. It distinguishes between convictions and sentences clearly suggesting there is a difference. If "conviction" was meant to

_____

[5] The Court notes that the plea agreement also states that "no waiver of the right to appeal, or to challenge the adjudication of guilt or the sentence imposed in any collateral attack, shall apply to a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel," and this arguably could be read as waiving the right to challenge the conviction (i.e. "the adjudication of guilt") by way of a collateral attack. Leaving aside that this is a waiver of certain claims, it at best creates an ambiguity, and "'plea agreements are to be interpreted strictly, with ambiguities construed against the government.'" United States v. Jones, 569 F.3d 569, 572 (6th Cir. 2009) (quoting United States v. Caruthers, 458 F.3d 459, 470 (6th Cir. 2006)).

9

mean a "final conviction" or the declaration of the conviction so as to encompass both guilt and the penalty imposed, there would be no need for the word "sentence."

The Government could have easily prevented the imprecision and has done so on countless occasions. Waivers from other federal courts in this circuit and in this state commonly make clear they apply to both the right to appeal and to collaterally attacking both the conviction and the sentence. See e.g., United States v. Toth, 668 F.3d 374, 378 (6th Cir. 2012) (in case out of the Western District of Kentucky, waiver provision states that defendant "knowingly and voluntarily waives the right ... to directly appeal his conviction" and to "contest or collaterally attack his conviction . . . pursuant to 28 U.S.C. § 2255 or otherwise"); Cox v. United States, 695 F. App'x 851, 853 (6th Cir. 2017) (in Western District of Tennessee case, defendant "expressly 'waive[d] the right to file any motions or pleadings pursuant to 28 U.S.C. § 2255 or to collaterally attack [his] conviction(s) and/or resulting sentence'"); Helton v. United States, No. 2:16-CR-030, 2020 WL 4550924, at *1 (E.D. Tenn. Aug. 6, 2020) ("Petitioner further agreed that he would 'not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction(s) or sentence with two exceptions: The defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.'")

Support for the conclusion that the waiver provision at issue here does not bar Starks' Davis-based claim can be found in In re Brooks, No. 19-6189, 2020 U.S. App. LEXIS 6371 (6th Cir. Feb. 28, 2020), a case that arose out of this district and involved virtually identical waiver language, save the length of the sentence involved. At issue in Brooks was the Government's argument that he should not be allowed to pursue a successive Section 2255 motion based upon Davis because of the waiver in the plea agreement. Rejecting that argument, the Sixth Circuit wrote:

10

[T]he waiver provides that Brooks waives only "the right to challenge [his] sentence"; it does not provide that he also waives the right to challenge his convictions – including his § 924(c) conviction that he seeks to challenge here. See United States v. Spear, 753 F.3d 964, 970 (9th Cir. 2014) ("[A] defendant's waiver of the right to appeal his sentence is distinct from a waiver of the right to appeal his conviction. . . . We therefore hold that a defendant's knowing and voluntary waiver of his right to appeal his sentence does not inherently encompass a knowing and voluntary waiver of his right to appeal his conviction."). This case is therefore distinguishable from In re Acosta, 480 F.3d 421, 422 (6th Cir. 2007), in which we denied a motion for authorization because of a waiver provision that prevented the movant from collaterally attacking his conviction and sentence. Because Brooks seeks to challenge only his § 924(c) conviction, we find that the present motion is not barred by the collateral-attack waiver.

Id. at *3. Although In re Brooks is not controlling because it is unpublished, it is highly and logically persuasive because it involved a virtually identical waiver provision invoked by the Government where a defendant attempted to collaterally attack his conviction. Also strongly persuasive are at least three decisions by Judge Trauger that relied upon In re Brooks and found waiver provisions similar (if not identical to the one here) ambiguous. See, Hall v. United States, Case No. 3:20-cr-00646, Doc. No. 9 at 6-9 (M.D. Tenn, Jan. 21, 2021); Lee v. United States, No. 3:19-cv-00850, 2020 WL 7425862, at *6 (M.D. Tenn. Dec. 18, 2020); United States v. Serrano, No. 3:19-CV-00719, 2020 WL 5653478, at *12 (M.D. Tenn. Sept. 23, 2020).

Before ending this section, the Court addresses one more point. In his reply, Starks spends two pages discussing Vowell v. United States, 938 F.3d 260, 267 (6th Cir. 2019), Slusser v. United States, 895 F.3d 437, 439 (6th Cir. 20018), and United States v. Caruthers, 458 F.3d 459, 472 (6th Cir. 2006), all of which dealt with whether, notwithstanding a valid waiver, a defendant can collaterally assert that a change in the law makes his sentence longer than that authorized by statute. On this score, Starks argues that "[a]lthough the government urges the Slusser and Seventh Circuit

11

approach,[6] this Court presently must follow the earliest rule from the Sixth Circuit, namely, that of Caruthers." (Doc. No. 14 at 9).

This Court has previously addressed the vexing relationship between Vowell, Slusser, and Carruthers, see Bingham v. United States, No. 3-18-CV-1335, 2020 WL 5530131, at *2 (M.D. Tenn. Sept. 15, 2020), but finds it unnecessary to do so here because the waiver in Starks' plea agreement does not bar a collateral attack based upon Davis. Moreover, the Government has not "urged" Slusser and "the Seventh Circuit approach" in this case, even though it has done so in other cases, such as in Serrano, 2020 WL 5653478 at 10, where counsel was also of record.

**B. Substantive Claims**

Starks did not directly appeal his convictions or sentence and has thus procedurally defaulted on the claims he presents here. Consequently, his claims can be considered only if Starks "can first demonstrate 'cause' and actual 'prejudice,' . . . or that he is 'actually innocent[.]" Bousley v. United States, 523 U.S. 614, 622 (1998) (citations omitted). Here, Starks asserts the default on his Davis claim can be excused because he is factually innocent of the crime. Conversely, he argues that the default on his Rehaif claim can be excused because he can show cause and prejudice. The first argument presents a close question, the second does not.

### 1. *Davis Claim*

Starks was charged with conspiring and attempting to commit Hobbs Act robbery in relation to Leggs' murder. "[C]onspiracy to commit Hobbs Act robbery, which makes it a crime to conspire to 'in any way or degree obstruct[ ], delay[ ], or affect[ ] commerce or the movement of any article

---

[6] The "Seventh Circuit approach" was laid out in United States v. Worthen, 842 F.3d 552, 555 (7th Cir. 2016). There, the court found the argument that "the validity of [a defendant's] appeal waiver depends on the validity of his conviction" to be "entirely circular."

or commodity in commerce, by robbery, 18 U.S.C. § 1951(a)'" is not a crime of violence post-Davis. United States v. Ledbetter, 929 F.3d 338, 360–61 (6th Cir. 2019). On the other hand, the Sixth Circuit has held that "Hobbs Act robbery constitutes a crime of violence," United States v. Gooch, 850 F.3d 285, 292 (6th Cir. 2017), and this remains true, even post Davis. Porter v. United States, 959 F.3d 800, 804 (6th Cir. 2020).

But what about *attempted* Hobbs Act robbery, is that a crime of violence? "Some courts say yes. Some courts say no." Halliday, 2021 WL 26095, at *1. While "[t]he question has split the circuits," id., the Sixth Circuit "ha[s] yet to address this question head on," United State v. Clancy, 979 F.3d 1135, 1140 (6th Cir. 2020). See also United States v. Sherrill, 972 F.3d 752, 768 (6th Cir. 2020) ("We have yet to address whether attempt to commit Hobbs Act robbery qualifies as a crime of violence under 18 U.S.C. § 924(c)'s elements clause, and we decline to do so here."). Other circuits also have yet to directly weigh in on the question. See United States v. Tyrell, No. 18-3029-CR, 2021 WL 21775, at *4 (2d Cir. Jan. 4, 2021) (stating "we have not yet determined whether attempted Hobbs Act robbery is a categorical crime of violence"); United States v. Kayarath, 822 F. App'x 786, 791 (10th Cir. 2020) (stating that because defendant's conviction for Hobbs Act robbery was sound, " we need not address the district court's alternative ruling that attempted Hobbs Act robbery does not constitute a crime of violence under § 924(c)"). Those circuits that have addressed the issue have reached opposite conclusions.

Starks first argues that this Court need not enter into the foray because he was charged with "conspiring *and* attempting" to commit Hobbs Act robbery. His theory is that, under the commonly-accepted legal fiction that "and" also means "or" in an indictment, see United States v. Budd, 496 F.3d 517, 528 (6th Cir. 2007), "the Court must assume that [his] § 924(j) conviction was based on

13

the least of the underlying crimes of violence charged in the indictment, *viz*., a Hobbs Act conspiracy." (Doc. No. 9 at 9). Even though "dangers . . . may lurk in indictments that list multiple potential predicate offenses in a single § 924(c) count," In re Gomez, 830 F.3d 1225, 1227 (11th Cir. 2-16), no such assumption is necessary here.

To figure out which crime (*i.e.* conspiracy and/or attempted robbery) "was integral to the defendant's conviction (that is, which was necessarily found or admitted) . . . [the] court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." United States v. Mathis, 136 S. Ct. 2243, 2249 (2016); see United States v. Runyon, 983 F.3d 716, 726 (4th Cir. 2020) ("[W]e review the indictment on which [defendant] was convicted and the jury instructions leading up to the conviction to determine the actual crime for which [defendant] was convicted."). Even a cursory review of the plea agreement and the plea hearing before Judge Trauger make clear that Starks pled guilty too, and was convicted of, both conspiracy and armed robbery. Accordingly, the Court turns to the issue of whether attempted armed robbery under the Hobbs Act is categorically a crime of violence.

Post-Davis, three circuits have held that attempted Hobbs Act robbery is a crime of violence under the elements clause. The Ninth Circuit has explained:

> [A]ttempted Hobbs Act armed robbery is a crime of violence for purposes of § 924(c) because its commission requires proof of both the specific intent to complete a crime of violence, and a substantial step actually (not theoretically) taken toward its completion. It does not matter that the substantial step – be it donning gloves and a mask before walking into a bank with a gun, or buying legal chemicals with which to make a bomb – is not itself a violent act or even a crime. What matters is that the defendant specifically intended to commit a crime of violence and took a substantial step toward committing it. The definition of 'crime of violence' in § 924(c)(3)(A) explicitly includes not just completed crimes, but those felonies that have the

14

> 'attempted use' of physical force as an element. It is impossible to commit attempted Hobbs Act robbery without specifically intending to commit every element of the completed crime, which includes the commission or threat of physical violence. 18 U.S.C. § 1951. Since Hobbs Act robbery is a crime of violence, it follows that the attempt to commit Hobbs Act robbery is a crime of violence.

United States v. Dominguez, 954 F.3d 1251, 1255 (9th Cir. 2020) (internal case citation omitted);

accord United States v. Ingram, 947 F.3d 1021, 1026 (7th Cir. 2020); United States v. St. Hubert, 909 F.3d 351 (11th Cir. 2018).

Most recently, the Fourth Circuit – "informed by [its] recent decision in United States v. Mathis, 932 F.3d 242 (4th Cir. 2019) . . . that substantive Hobbs Act robbery categorically *qualifies* as a 'crime of violence' under § 924(c)(3)(A)," United States v. Taylor, 979 F.3d 203, 207–08 (4th Cir. 2020) (emphasis added) – nevertheless held that attempted Hobbs Act robbery is not categorically a crime of violence. In parting company with its sister circuits, the Fourth Circuit opined that those holdings "rest . . . on a rule of their [the courts'] own creation. Specifically, they hold that '[w]hen a substantive offense would be a violent felony under § 924(e) and similar statutes, an attempt to commit that offense also is a violent felony.'" United States v. Taylor, 979 F.3d 203, 208 (4th Cir. 2020) (quoting St. Hubert, 909 F.3d at 351-53). Insisting "this is simply not so," the Fourth Circuit observed:

> [A]n attempt to commit a crime of violence need not involve the attempted use of physical force. Some crimes of violence can be accomplished merely through the threatened use of force. The crime at issue here – attempted Hobbs Act robbery – is just such a crime. But an attempt to threaten force does not constitute an attempt to use force. A person who attempts to commit Hobbs Act robbery by passing a threatening note to a store cashier has attempted the planned robbery without using or attempting to use physical force. He may case the store that he intends to rob, discuss plans with a coconspirator, and buy weapons to complete the job. But none of this conduct involves an attempt to use physical force, nor does it involve the use of physical force or the threatened use of physical force. In these circumstances, the defendant has merely taken nonviolent substantial steps toward threatening to use

15

physical force. The plain text of § 924(c)(3)(A) does not embrace such activity.

Id. at 208-9; see also, Dominguez, 954 F.3d at 1263 (Nguyen, J. dissenting) (stating it is "a leap of logic" to hold that "when a substantive offense is a crime of violence under 18 U.S.C. § 924(c)(3)(A), an attempt to commit that offense is also a crime of violence"); United States v. Cheese, No. 18-CR-33-2 (NGG), 2020 WL 705217, at *3 (E.D.N.Y. Feb. 12, 2020) ("The Government's argument collapses the distinction between acts constituting an underlying offense and acts constituting an attempt of the underlying offense, which does not square with the Supreme Court's decision in Davis.").

In the absence of controlling authority in this circuit, the Court has studied the matter and concludes, as did the Fourth Circuit in Taylor and various district courts outside that circuit,[7] that attempted Hobbs Act robbery is not categorically a crime of violence. Clearly what Starks and Kimbrough did to Leggs was violent by any definition. But, with the residual clause removed from the equation by Davis, the question is whether attempted armed robbery necessarily "has as an element the use, attempted use, or threatened use of physical force against the person or property of another[.]" 18 U.S.C. § 924(c)(3)(A); see also Johnson v. United States, 135 S. Ct. 2551, 2557 (2015) (stating that a court is to determine whether a felony qualifies as a crime of violence "in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion"). The answer, the Court believes, is "no."

An "attempt" crime contains two substantive elements: the intent to commit the underlying crime, and undertaking an overt act that constitutes a substantial step toward completing the offense.

---

[7] See e.g. Halliday, 2021 WL 26095; United States v. Culbert, 2020 WL 1849692 (E.D.N.Y. Apr. 13, 2020); Lofton v. United States, 2020 WL 362348 (W.D.N.Y. Jan 22, 2020).

United States v. Resendiz-Ponce, 549 U.S. 102, 107 (2007); Braxton v. United States, 500 U.S. 344, 349 (1991). Neither the intent (*mens rea*) nor the act (*actus rea*) element categorically requires violence, or even the intent to use violence. "A would-be robber may poke his finger under his shirt at an intended victim and tell the victim to give him her money or he will shoot her. If the victim runs away rather than forking over her cash, then the would-be robber could still be convicted for an attempted Hobbs Act robbery, because the Hobbs Act defines a robbery to include "the unlawful taking or obtaining of personal property . . . by means of actual or threatened force," 18 U.S.C. § 1951(b)(1)." Halliday, 2021 WL 26095, at *5.

To be sure, Hobbs Act robbery is a crime of violence and the "the definition of a crime of violence in the use-of-force clause in § 924(c)(3)(A) explicitly includes offenses that have as an element the "attempted use" or "threatened use" of physical force against the person or property of another." St. Hubert, 909 F.3d at 351. It does not necessarily follow, however, that an attempt to commit Hobbs Act robbery is likewise a crime of violence. Rather, "[t]he only conclusion that logically can be drawn . . . is that an attempt to commit an offense having as an element the use, attempted use, or threatened use of physical force necessarily involves, at a minimum, intent to commit that offense, including the offense's use, attempted use, or threatened use of physical force element. But having the intent to commit a crime involving the use of force simply is not the same thing as using, attempting to use, or threatening the use of force." Hylor v, United States, 896 F.3d 1219, 1226 (11th Cir. 2018) (Pryor, J. concurring).

Stated differently:

unlike substantive Hobbs Act robbery, attempted Hobbs Act robbery does not invariably require the use, attempted use, or threatened use of physical force. The Government may obtain a conviction for attempted Hobbs Act robbery by proving

17

that: (1) the defendant specifically intended to commit robbery by means of a threat to use physical force; and (2) the defendant took a substantial step corroborating that intent. The substantial step need not be violent. Where a defendant takes a nonviolent substantial step toward threatening to use physical force — conduct that undoubtedly satisfies the elements of attempted Hobbs Act robbery — the defendant has not used, attempted to use, or threatened to use physical force. Rather, the defendant has merely attempted to threaten to use physical force. The plain text of § 924(c)(3)(A) does not cover such conduct.

Taylor, 979 F.3d at 208 (internal citation omitted). "Congress could have written the force clause to say that a crime need only have 'as an element an *intent* to use, attempt to use, or threaten to use physical force," but did not do so. Halliday, 2021 WL 26095, at *3 (emphasis added). "That is why a conspiracy to commit a Hobbs Act robbery does not qualify as a crime of violence: no matter how venal or dangerous a conspiracy may be, a conspiracy does not require as an elemental matter that anyone use, attempt to use, or threaten to use physical force." Id.

Consider the following scenarios:

1. A man stops an armored vehicle and shoots and injures the driver. But the driver escapes with the money.

2. A man intercepts an armored vehicle by standing in front of it with his gun pointed at the driver. He pulls the trigger, intending to strike and injure the driver, but the gun jams. The driver escapes with the money.

3. A man plans a robbery, buys the necessary gear, and drives toward the target, but returns home after seeing police in the vicinity.

Each scenario describes an attempted Hobbs Act robbery. In (1), the man uses physical force. In (2), the man attempts to use physical force. In (3), the man does not use, attempt to use, or threaten to use physical force, even though he intended to commit a robbery and took a substantial step toward committing it. This last scenario—a possible "least serious form" of attempted Hobbs Act robbery—shows that an attempted Hobbs Act robbery does not qualify as a crime of violence under the elements clause.

Dominguez, 954 F.3d at 1263-64) (Nguyen, J. dissenting). Real world examples also show that

18

attempted robberies do not categorically include the attempted, threatened, or actual use of violence:

> In <u>United States v. Stallworth</u>, 543 F.2d 1038, 1041 (2d Cir. 1976), the Second Circuit upheld an attempted robbery conviction where the defendants "reconnoitered the bank, discussed (on tape) their plan of attack, armed themselves and stole ski masks and surgical gloves," had a getaway car ready, and "moved ominously toward the bank." None of these actions was violent. Even less was sufficient to convict the defendants of attempted bank robbery in <u>United States v. Jackson</u>, 560 F.2d 112 (2d Cir. 1977). In that case, the Court upheld the conviction where the defendants "reconnoitered the place contemplated for the commission of the crime and possessed the paraphernalia to be employed in the commission of the crime." <u>Id.</u> at 120. There, too, violence – threatened, attempted, or otherwise – was absent. In <u>United States v Muratovic</u>, 719 F.3d 809, 816 (7th Cir. 2013), the Seventh Circuit affirmed an attempted robbery conviction where "the co-conspirators had assembled a team, finalized the robbery plan, conducted surveillance on the truck, procured two handguns and all other supplies called for in the plan," filled up gas cans for the drive, and arrived on location of the would-be crime. No violence.

<u>United States v. Culbert</u>, 453 F. Supp. 3d 595, 598–99 (E.D.N.Y. 2020); <u>see also</u> <u>United States v. Wrobel</u>, 841 F.3d 450, 453-55 (7th Cir. 2016) (upholding attempted Hobbs Act robbery conviction where evidence showed defendants planned robbery of diamond merchant, secured van, traveled across state lines, but were arrested before robbery and found in possession of gloves, a pry bar, and hoods to disguise their looks); <u>United States v. Gonzalez</u>, 441 F. App'x 31, 36 (2d Cir. 2011) (finding sufficient evidence of attempted Hobbs Act robbery where defendants "reconnoiter[ed] at the scene of the contemplated crime while in possession of paraphernalia," including a firearm, a starter pistol, and ski masks).

It is not for this Court to decide whether it is too simplistic or a leap in logic to conclude that, merely because Hobbs Act robbery is a crime of violence, an attempt to commit such a robbery must also be true. Rather, it is for the Court to determine whether there is a "realistic probability, not a theoretical possibility," <u>Gonzales v. Duenas-Alvarez</u>, 549 U.S. 183, 193 (2007), that attempted Hobbs Act necessarily requires "the use, attempted use, or threatened use of physical force against

19

the person or property of another[,]" 18 U.S.C. § 924(c)(3)(A). Because it does not, Starks is legally innocent of the attempted robbery conviction set forth in Count Two of the 2016 case, and that count must be vacated. See, Ledbetter, 929 F.3d at 361 (holding that because "the Government relies only on that now-invalidated clause to support [defendants'] convictions under § 924(c), those convictions must be set aside.").[8] The Court will hold a new sentencing hearing, during which it "'may increase the sentences for any remaining counts' if such an increase is warranted." Davis, 139 S.Ct. at 2336 (quoting Dean v. United States, 137 S.Ct. 1170, 1176 (2017)).

In reaching this conclusion, the Court has considered the Government's argument based on Bousely v. United States, 523 U.S. 614, 624 (1998), in which the Supreme Court held that "in cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges." This rule has been extended to crimes that are equally as serious as to the one that is vacated. See United States v. Caso, 723 F.3d 215, 222 (D.C. Cir. 2013) (stating that "the likely rationale for the Bousley rule supports requiring petitioners to show their innocence of equally serious charges"); Lewis v. Peterson, 329 F.3d 934, 937 (7th Cir. 2003) ("The logic of the Bousley opinion does not require that the charge that was dropped or forgone in the plea negotiations be more serious than the charge to which the petitioner pleaded guilty. It is enough that it is as serious.").

The Bousley rule is inapplicable here. Count Two, the attempted robbery charge, carried a potential life sentence because it resulted in death, whereas Count Five, which charged a conspiracy to intimidate or tamper with a witness, carried a maximum penalty of 20 years imprisonment. Count Six, like Count Two, carried a maximum sentence of life imprisonment, but that count did not

---

[8] With this conclusion, Starks' alternative argument as set forth in claim three is moot.

involve an allegation of death and for this reason alone might be viewed as less serious. Regardless, Count Six charged a conspiracy to use a firearm during a crime of violence in violation of 18 U.S.C. 924(c)(1)(a). "Crime of violence" is, of course, defined in § 924(c)(3). Because the Supreme Court in Davis found the residual clause in § 924(c)(3)(A) unconstitutionally vague, and the Sixth Circuit in Ledbetter stated that a conspiracy does not meet the elements clause of § 924(c)(3)(B), Starks could not have been any more guilty of that crime than he was of attempted Hobbs Act robbery.

### 2. *Rehaif*-Claim

Starks does not contend he is actually innocent of the charges in Counts Three and Eight, which allege he possessed a firearm while a user of controlled substances. Instead, he claims he can show both cause and actual prejudice to excuse his default. The Court disagrees.

Starks argues that "[c]ause for default is established when 'a constitutional claim is so novel that its legal basis [was] not reasonably available to counsel' at the time of the default." (Doc. No. 14 at 13) (citing Reed v. Ross, 468 U.S. 1, 16 (1984)). True enough, but the issue of whether a defendant must have had knowledge of his prohibited status as an element of the charge has been "percolating in the courts for years." United States v. Bryant, No. 11-CR-765, 2020 WL 353424, at *3 (E.D.N.Y. Jan. 21, 2020). Indeed, "[b]efore the Supreme Court's decision in Rehaif, the Court of Appeals for the Sixth Circuit repeatedly stated that, to prove a violation of § 922(g), the Government [only] had to show that the defendant 'had' a prior felony conviction and that he 'knowingly' possessed a firearm." United States v. Wilson, No. 1:17-CR-60, 2019 WL 6606340, at *5 (W.D. Mich. Dec. 5, 2019) (collecting cases dating back to 2010). The fact that this authority was against Starks' position does not excuse his default. See Bousley, 523 U.S. at 623 (rejecting the argument that adverse circuit precedent could excuse procedural default and explaining that

"futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time"); Gatewood v. United States, 979 F.3d 391, 395–96 (6th Cir. 2020) (observing that, in light of Bousley and other precedent, "'futility cannot be cause,' at least where the source of the 'perceived futility' is adverse state or lower court precedent").

Nor has Starks established prejudice because he has not shown "there is a reasonable probability that, but for [the] errors, he would not have pleaded guilty and would have instead insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). While Starks claims "he plausibly could have denied knowledge of having the status of a controlled substance abuser or addict," (Doc. No. 14 at 14), this is belied by the record.

According to the Presentence Report, to which Starks lodged no objections, "defendant has a history of drug and alcohol use; therefore a substance abuse condition is recommended." (PSR at 38). Starks himself reported that, since the age of 9, he used marijuana daily. He also stated that, from the age of 13, he drank alcohol, and used Molly, Ecstasy, and Lortab sporadically, but at least once a month. (Id. at 29-30). Additionally, in both his plea agreement and at his plea hearing, Starks admitted that "he was an unlawful user of controlled substances during the entire time covered by the charges in these two cases." (Case No. 3:16-cr-142 Doc. Nos. 187 at 5; 204 at 26).

Because Starks cannot show cause and prejudice for his default, or actual innocence of the crimes alleged in Counts Three and Eight, his Rehaif-based claim will be denied.

### III. Conclusion

For the foregoing reasons, Starks' Amended Motion to Vacate, Set Aside, or Correct Sentence in Accordance With 28 U.S.C. § 2255 will be granted with respect to his Davis claim, and Count Two in the 2016 case will be vacated. His claim based on Rehaif will be denied.

22

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE